# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEREL BILLIE WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,[1]<br><br>Defendant. | **Case No. 1:16-cv-1574-GSA**<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF CHEREL BILLIE WASHINGTON** |

**I.  INTRODUCTION**

Plaintiff Cherel Billie Washington ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs (Docs. 18, 21, and 22) which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] After reviewing the administrative record, the Court finds the ALJ applied the correct legal standards and the decision is supported by substantial evidence. Accordingly, the

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (Doc. 9 and 10).

1

Court denies Plaintiff's appeal.

## II. BACKGROUND AND PRIOR PROCEEDINGS

### A. Background

On June 29, 2012, Plaintiff filed an application for SSI alleging disability beginning April 6, 2010. AR 11; 231-237. The parties agree that Plaintiff properly exhausted her administrative remedies and that the Appeals Council denied Plaintiff's appeal. (Doc. 18, pgs. 1-2 and Doc. 21, pg. 6). Therefore, this appeal is a review of Administrative Law Judge Troy Silva's ("ALJ") decision issued on July 23, 2015, which is considered the Commissioner's final order. See, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 11-21.

### B. Summary of the Medical Record

The Court has reviewed the entire medical record. AR 301-716. Because the parties are familiar with the factual background of this case, including Plaintiff's medical history, the Court will not exhaustively summarize these facts in this order. Relevant portions of the medical record related to Plaintiff's impairments and treatment raised in this appeal will be referenced in this decision where appropriate.[3]

### C. Relevant Plaintiff's Testimony

Plaintiff previously worked as a telemarketer and as a food food worker. AR 48-52. She testified that she could not perform her previous work because she could not sit, stand, or walk due to pain and dysfunction in her neck, back, hands and lower extremities. AR 50-52. Prior to her release from imprisonment on March 26, 2015, she performed laundry work for nine and a half to ten hours per day. However, she was able to take "several" breaks and alternate between sitting and standing while working. AR 48-49.

Plaintiff also suffers from asthma and Graves disease which causes blurred vision and irritation in both eyes. AR 54-55. She is unable to go through an eight hour day without laying down or changing positions due to pain. AR 52-53. She uses Singular and inhalers to help with her asthma and Gabapentin and Oxycodone for pain. AR 55-57.

---

[3] Plaintiff also alleged disability based on psychological impairments, however, issues related to these conditions were not raised in this appeal and are not discussed in this decision.

With regard to activities of daily living, Plaintiff testified that she prepares meals, washes clothes, walks to the bus stop, and watches her six grandchildren. AR 53. She gets exercise by taking care of her grandchildren, walking around the house and lifting her legs. AR 57.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a).[4] The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 416.920 (a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)(4).

///

---

[4] References to the regulations in this decision are to the 2015 regulations which were in effect at the time of the ALJ's decision.

3

### A. The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR11-21. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 3, 2012, the application date. AR 13. The ALJ identified degenerative disc disease of the lumbar spine, carpal tunnel syndrome, neuropathy, and asthma as severe impairments. AR13-16. However, he determined that Plaintiff's obesity, arthritis of the shoulders, fibromyalgia, anxiety, depression and Plaitniff's Grave's disease were nonsevere impairments. AR 13-16. Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 17.

Based on the review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, except she could: lift and/or carry twenty pounds occasionally and ten pounds frequently; she could stand, walk and/or sit for six hours in an eight hour workday; she could perform postural activities on an occasional basis; she is precluded from climbing ladders, ropes or scaffolds; she can frequently handle and finger with her hands bilaterally; and she must avoid concentrated exposure to extreme heat and cold, vibration, pulmonary or respiratory irritants, and hazards. AR 17-20. Based on this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a fast food worker and as a telephone solicitor. AR 20.

### III.  ISSUES PRESENTED

Plaintiff argues that the ALJ failed to properly consider the relevant medical evidence. Specifically, she asserts that the ALJ's reliance on state agency non-examining physicians' opinons was improper because they did not have access to all of the relevant testing when formulating their opinions. She also contends that the ALJ improperly rejected Plaintiff's pain testimony. Plaintiff requests that the matter be remanded for further proceedings. (Doc. 18, pgs. 9-15). The Commissioner argues that the ALJ's evaluation of the medical evidence was proper and that his credibility determination is supported by substantial evidence. (Doc. 21, pgs. 12-23).

## IV. STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## V. DISCUSSION

### A. The ALJ Properly Weighed the Medical Evidence.

Plaintiff argues that the ALJ's evaluation of the medical evidence is improper. Specifically, she contends that the state agency reviewing physicians did not evaluate electromyography (EMG) and nerve conduction studies (NCS) performed in October 2012 (AR 558) confirming peripheral neuropathy in the lower extremities, and carpal tunnel syndrome in the upper right extremity, as well as a CT scan taken in August 2011 that detected evidence of multilevel degenerative disease in the cervical spine, with moderate stenosis at the C5-C6 and C6-C7 levels. AR 575. Similarly, she contends that other EMG/NCS tests completed in August 2011 (AR 382 and 386) were not reviewed by the first state agency doctor because they were not obtained by the agency until sometime after June 21, 2013, which was after the record was reviewed.

The Defendant argues that the ALJ's evaluation of the medical evidence was proper because he considered the entire medical record which supported the non-examining physicians' opinions. Moreover, Dr. Ombres, the second non-examining physician, reviewed the 2011 EMG

and NCS results before concluding that Plaintiff would be able to perform light work with some postural modifications, and that the later submitted electrodiagnostic study performed in 2012 was essentially identical to the tests previously performed in 2011. The Defendant argues that the ALJ therefore properly considered the entire medical record including Plaintiff's treating physicans' notes, as well as the consultative examiners' findings. Thus, the ALJ's evaluation of the medical record is supported by substantial evidence. (Doc. 21, pgs. 12-18).

   *1. The Law*

Under the law of this circuit, the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). An ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle,* 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected for specific and legitimate reasons. *Id.; Garrison v. CSS,* 759 F.3d 995, 1012 (9th Cir. 2014); *Ghanim v. CSS,* 763 F. 3d 1155, 1161 (9th Cir. 2014). The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas,* 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester,* 81 F.3d at 831, *citing Magallanes v. Bowen,* 881 F.2d 747, 751–755 (9th Cir. 1989).

   *2. Analysis*

Here, the ALJ discussed three doctors' opinions evaluating Plaintiff's conditions: Dr.

Payam Moazzaz, M.D, a certified orthopedic surgeon who performed a consultative exam, and Drs. Kalmar and Ombres, two state agency non-examining physicians. Dr. Moazzaz performed an examination and completed a physical medical source statement on November 3, 2013. AR 20; 546-550. At this examination, Plaintiff complained of pain throughout her body and reported that she treated her pain with medication, injections, and radiofrequency treatments. AR 546-547. She denied any history of spinal surgical intervention. AR 547. Dr. Moazzaz observed that Plaintiff had normal gait; normal heel and toe walking; and she was able to squat. AR 547. Plaintiff reported pain and had reduced range of motion in her lumbar spine, but she had full range of motion in her cervical spine, shoulders, elbows, wrists, hands, fingers, hips, knees, ankles, and feet. AR 547-548. She had negative straight leg raise testing bilaterally and no evidence of muscle spasm. AR 548. Dr. Moazzaz noted that Plaintiff had full 5/5 strength and intact sensation and reflexes in her extremities with full range of motion in her hands and fingers. AR 548-549. Tinel's Phalen's and Finkelsein tests were negative bilaterally. AR 548. X-rays performed at this consultative physical examination revealed advanced space narrowing at L5-S1 with facet hypertrophic changes. AR 549-550.

Dr. Moazzaz concluded that Plaintiff was able to perform light work. Specifically, he found Plaintiff could lift ten pounds frequently and twenty pounds occasionally, and that she could stand, walk, and sit for six hours in a normal eight-hour workday with normal breaks. AR 550. Dr. Moazzaz also found that Plaintiff did not require use of an assistive device when walking and that she could perform postural activities occasionally. AR 550. Finally, Dr. Moazzaz determined that Plaintiff had full use of her hands for fine and gross manipulative movements, and no restrictions in her ability to perform overhead activities. AR 550.

Dr. F. Kalmar, M.D., a state agency non-examimng physician reviewed Plaintiff's records on December 4, 2012. AR 74-75, 78-80. Dr. Kalmar concluded that Plaintiff could perform light work except that Plaintiff was only able to occasionally balance, kneel, crouch, and crawl, and frequently handle and finger. AR 78-80. Dr. Kalmar also opined that Plaintiff should avoid concentrated exposure to extremes in temperature, vibration, hazards, and respiratory irritants (such as fumes, odors, dusts, gases, and poor ventilation). AR 79-80. Dr. Pamela Ombres, M.D.,

reviewed Plaintiff's records on November 13, 2013, and affirmed Dr. Kalmar's conclusions. AR 92-93, 95-97.

When evaluating the medical evidence, the ALJ stated he was giving Dr. Moazzaz's opinion less weight because although the doctor opined Plaintiff could perform light work, he did not assess any manipulative limitations. AR 20. The ALJ found that manipulative limitations were warranted in light of the diagnostic testing showing bilateral carpal tunnel syndrome. AR 20. Accordingly, he relied on the non-examing physicians' opinions who determined Plaintiff could perform light work with manipulative and environmental restricions. The RFC mirrors the non-examining doctors' limitations.

The Court finds that ALJ's reliance on the non-examing physicians' opinions was proper. First, the ALJ summarized the medical record including the electrodiagnostic testing and nerve conduction studies from 2011. He noted that these tests revealed chornic radiculopathy affecting the S1 nerve roots and underlying distal polyneuropathy, as well as bilateral median nerve dysfunction of the wrists and underlying distal polyneuropathy. AR 18; 380-386. He also summarized the electodiagnostic testing of the extremities performed in October 2012, which revealed findings suggestive of sensory-neural peripheral neuropathy and carpal tunnel syndrome with axonal loss in the right extremity. AR 19; 556-558. However, he also noted that subsequent notes from Plaintiff's treating physician, Dr. Sarah Buenviaje-Smith, revealed that although Plaintiff had paravertebral tenderness, there were mild findings on physical examinations, normal gait, no gross motor deficits, and that Plaintiff was doing "okay" with medications in 2013. AR 19; 489-491; 493; 499. Finally, the ALJ partially relied on Dr. Moazzaz's findings after he conducted an in-person physical examination. In doing so, the ALJ noted that although Plaintiff reported pain with range of motion testing and decreased lumbar flexion, the findings were otherwise unremarkable.[5] AR 19; 546-550. The ALJ noted that although Dr. Moazzaz was an orthopedic surgeon who opined Plaintiff was capable of light work, he thought that manipulative limitations were warranted in light of the diagnostic testing showing bilateral carpal tunnel

---

[5] In addition to his own findings, Dr. Moazzaz noted he reviewed pain management notes documenting L3, L4, and L5 radiofrequency ablation treatment with pain medications (AR 546), as well as radiographs of the lumbar spine showing advanced disc narrowing at L5-SI with facet hypertrohic changes. AR 549.

syndrome. AR 20.

The Court is not persuaded by Plaintiff's argument that the ALJ erroneously relied on the state examining physicans' assessments because the state agency reviewing physicians did not evaluate EMG/NCS testing completed in August 2011. AR 382 and 386. Although there is no evidence that Dr. Kalmar saw these tests, Dr. Ombres did reference these studies when reviewing Dr. Purnima's notes. AR 91; 382; 386. The EMG and NCS tests performed in October 2012 (AR 558) confirming peripheral neuropathy in the lower extremities and carpal tunnel syndrome in the upper right extremity, was consistent with the previous testing Dr. Ombres already reviewed. AR 558. Finally, the fact that the ALJ did not reference a CT scan taken in August 2011 that detected evidence of multilevel degenerative disease in the cervical spine, with moderate stenosis at the C5-C6 and C6-C7 levels (AR 575), was inconsequential in light of the ALJ's reliance on the most recent physical examination performed by Dr. Moazzaz in November 2013, which was unremarkable. The ALJ also reviewed other treatment notes in the file from Plaintiff's treating physican after the time this CT scan was taken. AR 19-20; 489-491; 493; 546-550.

It is well established that the ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. When "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). Moreover, an ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Valentine v. Astrue*, 574 F.3d 685, 692-93 (9th Cir. 2009) (ALJ properly gave greater weight to examining physician and state agency physician when evaluating RFC and rejecting another doctor's contradictory opinion). Here, the ALJ gave the most weight to the non-examining phyisicians' opinions because in spite of Dr. Moazzaz's largely unremarkable findings during his physical examination, Dr. Kalmar and Dr. Ombres assessed more limitations to address Plaintiff's carpal tunnel syndrome and imposed environmental restrictions, which was proper given the medical evidence as a whole. The ALJ's findings are further supported by the fact that no physician offered an opinion that Plaintiff

suffered from additional functional limitations. As such, the ALJ's assessment of the medical record is supported by substantial evidence. Even though Plaintiff summarized the medical record and disagrees with the ALJ's conclusions regarding this evidence, she has not established any legal error with the ALJ's analysis. Instead, she merely sets forth her interpretation of the same evidence the ALJ analyzed and asks the court to choose her interpretation over the ALJ's analysis. (Doc. 18, pgs. 10-11). While the Court is sympathetic to Plaintiff's case, where more than one rational interpretation of the evidence exists, the ALJ's conclusion must be upheld. *Thomas*, 278 F.3d at 954; *Magallanes*, 881 F.2d at 750.

### B. The ALJ Properly Discredited Plaintiff's Subjective Complaints.

Plaintiff argues that the ALJ improperly rejected her testimony regarding the severity of her symptoms. Specifically, she alleges that the ALJ failed to provide specific reasons for rejecting her testimony. Additionally, she contends that the medical evidence supports her claims and that the ALJ mischaracterized Plaintiff's testimony regarding her activities of daily living, as well as her work at the prison to support his credibility finding. (Doc. 18, pgs. 11-15). Defendant argues that the ALJ provided specific and well-supported reasons for rejecting Plaintiff's allegations of disabling pain and therefore the ALJ's credibility findings should be upheld. (Doc. 21, pgs. 18-23).

*1. The Law*

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.; Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

statements and reasons for that weight.").[6] Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See Thomas*, 278 F. 3d at 958-959; *Light v. Social Security Administration*, 119 F. 3d 789, 792 (9th Cir. 1997), see also 20 C.F.R. § 416.929(c).

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown-Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester*, 81 F.3d at 834. When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

*2. Analysis*

Here, the ALJ identified the medical evidence as outlined above and noted that the limiting effects of Plaintiff's subjective complaints were greater than expected in light of the

---

[6] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. See 2016 WL 1020935, *1 (March 16, 2016) and 2016 WL 1131509, *1 (March 24, 2016) (correcting SSR 16-3p effective date to read March 28, 2016). Although the second step has previously been termed a credibility determination, recently the Social Security Administration ("SSA") announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." See SSR 16-3p, 2016 WL 1020935 at *1 ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). Although Social Security Rulings "do not carry the force of law," they "are binding on all components of the [SSA]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted).
As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo, v. Berryhill*, 862 F. 3d 987, 995 n.5 (9th Cir. 2017) *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). SSR 16-3p became effective after the issuance of the ALJ's decision and the Appeals Council denied review in the instant case. It is unclear whether SSR 16-3 applies retroactively. However, the applicability of SSR 16-3p need not be resolved here since the ALJ's evaluation of Plaintiff's subjective complaints in this case meets the guidelines set forth in both SSR 16-3p and its predecessor, SSR 96-7p.

objective evidence of record which is a permissible basis to find her not credible. AR 18; *See* 20 C.F.R.§ 416.929(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms …."); *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects").

In addition to the medical evidence, the ALJ noted that despite her allegations of pain, documents revealed that Plaintiff only had conservative treatment for her impairments. AR 18. Here, Plaintiff received shots for her pain but no surgical intervention for the spinal related complaints. AR 547. Moreover, as the ALJ noted, Plaintiff reported to Dr Buenviaje-Smith that medications alleviated her symptoms. AR 489-490. Despite her complaints of pain, her examinations revealed unremarkable or mild findings on physical examinations including paravertebral tenderness at L5-S1, normal gait, and no gross motor deficits. AR 19; 491; 493; 499; 546-550; *Warre v. Com'r of Soc. Sec*., 439 F. 3d 1001, 1005 (9th Cir. 2006) (impairment amenable to control is not disabling); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); *Bunnell v Sullivan*, 947 F.2d 341, 346-347 (9th Cir. 1991) (factors to evaluate credibility include medication effectiveness); *Fair v. Bowen*, 885 F.2d at 597; 603-604 (9th Cir. 1989) (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony; additionally, failure to follow prescribed treatment can be considered in determining credibility).

Finally, the ALJ found that Plaintiff had engaged in activities that were inconsistent with her allegations of disabling symptoms including running errands, shopping, doing household chores, cooking, reading, and caring for six children under the age of ten. AR 18; 53-54; 484 When identifying these areas the ALJ noted that the physical, mental, and social abilities required to perfom these tasks replicate the skills necessary for obtaining employment which undermined

her credibiltiy. AR 18; *Rollins*, 261 F.3d at 857 ("The ALJ also pointed out ways in which [the claimant's] claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, `laundry, shopping, attending therapy and various other meetings every week"). Plaintiff argues that these activities cannot support an adverse credibility determination because these activities do not equate to full-time employment. (Doc. 18 , pg. 12). However, an ALJ can properly discount a claimant's credibility when the daily activities demonstrate an inconsistency between what the claimant can do and the degree of the disability alleged. *Molina v. CSS*, 674 F. 3d 1104, 1112-1113 (9th Cir. 2012). Thus, these are clear and convincing reasons to reject Plaintiff's testimony. *See Thomas*, 278 F. 3d at 958-959 (ALJ can consider inconsistency between testimony and conduct); see also 20 C.F.R. § 416.1529(c) (An ALJ can consider inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct, as well as the claimant's daily activities); *See also, Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ may consider activities of daily living in credibility determination).[7]

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not credible. Here, the ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at 834. Although the Plaintiff has offered other interpretations of the evidence regarding her credibility, it is not the role of the Court to re-determine Plaintiff's credibility de novo. If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Accordingly, the ALJ's credibility determination was proper.

---

[7] The ALJ also relied on the fact that Plaintiff worked nine to ten hours on laundry detail when she was in prison as a basis to reject her testimony. However, Plaintiff correctly points out that during the hearing she reported that she often took breaks when she was tired during her shifts. AR 48-49. Given that Plaintiff took frequent breaks, the ALJ mischaracterized her testimony and improperly used it as basis to find her not credible. Notwithstanding, the Court finds that this error was harmless because the ALJ gave other reasons outlined above for his credibility determination which is supported by substantial evidence. *Batson v. Barnhart*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error); *Carmickle,* 533 F. 3d at 1162 (citing *Batson v. Comm. of Soc. Sec. Admin.*, 359 F. 3d 1190, 1197) ("So long as there remains Asubstantial evidence supporting the ALJ's conclusions on ... credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion" such is deemed harmless and does not warrant reversal.)

13

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. Accordingly, this Court ORDERS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Actng Commissioner of Social Security, and against Plaintiff, Cherel Billie Washington, and close this case.

IT IS SO ORDERED.

Dated: **February 11, 2018** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE